

ROBERT A. GORDON
U.S. BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR DISTRICT OF MARYLAND
(at Baltimore)

| | | |
|---|---|---|
| In re: | * | |
| The People's Community Health Centers, Inc. | * | Case Nos. 15-10228-RAG<br>Chapter 11 |
| | * | |
| Debtor | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION IN SUPPORT OF ORDER GRANTING MOTION
TO ALLOW LATE FILED CLAIM, AND,
<u>OVERRULING OBJECTION TO LATE FILED CLAIM</u>**

**I.   <u>Opinion</u>**

This case was commenced by the filing of a Voluntary Petition on January 7, 2015. On November 13, 2015, the Modified Plan of Reorganization filed by the Official Committee of Unsecured Creditors (Plan) was confirmed. *See* Docket No. 267 (Order of Confirmation). To actualize the mandate of the Order of Confirmation, the Liquidating Trustee has been administering the estate and the Plan by, among other things, liquidating assets and resolving claims.[1] A recurring issue has been the treatment of wage and related claims of former

---

[1] It should be noted that the Trustee has done a first-rate job in this regard, aided by the stellar efforts of his able Counsel. Not only has the Trustee been effective in an administrative and business sense while discharging his duties, but he has also shown common sense, integrity and compassion throughout.

1

employees of the Debtor. This is so, in part, because in the Spring of 2014, before filing this case, the Debtor terminated many of its employees in an unexpected (for the employees), wholesale fashion. It appears that the Debtor ceased all operations on, or about, July 14, 2014 although it continued to operate in an extreme, skeletal fashion well into this bankruptcy proceeding with the hope of eventual resurrection in some form or fashion.

New life never happened, but management of the lingering wage claims has proven to be an ongoing, post-confirmation theme. The bar date for filing claims was May 12, 2015 (Bar Date) and of the wage claims, a handful of matters to be resolved have involved claimants who appeared to have filed late claims. *See* for example, Docket Nos. 538, 542, 546, 549, 554, 551, 560, 561, 565, 567 and 568. In several instances, the Trustee has declined to contest the timeliness of such claims, choosing instead to accept the explanations given by the claimants in the letters they have provided to the Court regarding their entitlement to unpaid wages.

In this instance, former employees, Tonya Hawkins and Linda Gibbs, have likewise asserted wage claims against the estate. Ms. Hawkins was listed as holding an unsecured claim for "$1.00" on the Debtor's Amended Schedule E (Amended Schedule) (Dkt. No. 36), filed by the Debtor on January 30, 2015. She filed Proof of Claim No. 111 (Hawkins POC) on November 13, 2018. On October 22, 2019, Ms. Gibbs filed a letter (Dkt. No. 600) (Gibbs Letter) that requested payment of her wage claim. The Trustee has objected to the Hawkins POC and has opposed Ms. Gibbs' request, treating the Gibbs Letter as a motion to file a late claim. The Court agrees that the Gibbs Letter should be viewed that way. *See* Docket Nos. 595 and 605.

The Trustee is also correct in asserting that in both instances, the question presented is whether Ms. Gibbs and Ms. Hawkins should be permitted to share in the estate under Bankruptcy

Rule 9006(b)(1)(2)'s doctrine of excusable neglect.[2] To that end, an evidentiary hearing was held on January 29, 2020. Both Ms. Gibbs and Ms. Hawkins attended the hearing as did the Trustee, through counsel. The claimants, who bear the burden of establishing cause for finding excusable neglect, testified; the Trustee relied upon the general record of the case and the Bar Date.

The historic precedent, *Pioneer Inv. Services Co. v. Brunswick Assoc. L. P.,* 507 U.S. 380 (1993), applies to this dispute. In *Pioneer*, the Supreme Court set forth the factors to be applied to determine whether a late filed proof of claim should be allowed for reasons of excusable neglect. The Court held that the inquiry is essentially an equitable one requiring that all relevant circumstances be taken into account, including (a) the danger of prejudice to the debtor, (b) the length of the delay and its impact upon judicial proceedings, (c) the reason for the delay, and whether it was in the claimant's reasonable control, and (d) whether the claimant acted in good faith. *Pioneer* at 394.[3]

Here, neither claimant denies that they had knowledge of this case and both likely received the January 8, 2015, Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors & Deadlines (Notice) which includes the Bar Date.[4] Ms. Gibbs testified that she initially filed a claim for unpaid wages with the State of Maryland, believing she would be paid that way, but

---

[2] Bankruptcy Rule 9006(b)(1)(2) permits the court to expand the time for doing an act, "after the expiration of the specified period… where the failure to act was a result of excusable neglect."

[3] To this jurist, *Pioneer's* fascinating element has always been the fact that the claimant received timely, written notice of the bankruptcy filing, the bar date for filing claims was included in that notice and the notice was turned over to the claimant's attorney, a specialist in bankruptcy. The bankruptcy specialist then informed the claimant that no claims filing deadline had been fixed. *Pioneer* at 382. Yet, the late filed claim was allowed. The equities in favor of the claimant – the specialist's move from one law firm to another and the notice's failure to highlight the bar date in its title – combined with the lack of prejudice to the estate, served to persuade the Court that the result below was correct and should be affirmed.

[4] Both claimants were included for the first time as creditors on the Debtor's Amended Schedule and the Notice was sent to them at that time.

was eventually informed of the Debtor's bankruptcy filing. Thereafter, she testified, she operated under the assumption that she would be notified of a court hearing by someone. Eventually, after receiving other bankruptcy related notices, she called Trustee's Counsel and thereafter sent the Gibbs Letter. She wrote in the Gibbs Letter that she did not know she had to file a claim, but her testimony was somewhat less certain at the hearing. She also testified to (and described in the Gibbs Letter) learning of other former employees who had been paid by the estate, her hard work for the Debtor, and other equities. She asked in the Gibbs Letter that the Court, "[p]lease consider [her] request and ignorance for not filing a timely claim."

Ms. Hawkins testified that she did receive the Notice and the proof of claim form mailed with it, that someone helped her fill it out and that she mailed it to the Clerk via certified mail, although she no longer had any of the materials that would prove she did so. She therefore asserted that the Hawkins POC is not the first proof of claim that she forwarded to the Court. She also discussed her good faith work efforts for the Debtor and how unfair it would be for other employees to receive wage payments while she did not.

Trustee's Counsel did not call any witnesses or offer any exhibits, relying instead upon argument, the Bar Date and a brief cross-examination of Ms. Gibbs. When asked to specify any prejudice the estate would suffer if the claims were allowed, Counsel asserted that the Trustee was ready to close the case and that including two more claims in the calculation would delay the process.

All things considered, the Court is hard-pressed to see how it can equitably hold two layperson claimants, Ms. Hawkins and Ms. Gibbs, to a higher standard of competence and effectiveness than the bankruptcy specialist attorney in *Pioneer* who neglected to carefully read the notice in that case and as a result, missed the bar date. At worst, the competing positions

here appear to be at equipoise – the claimants both thought they were pursuing their claims and then learned they were not, while the Trustee only wants the case to come to an end without further delay.[5]  Payment of one or more additional claims always causes a dilution of a finite estate in some way, but standing alone, that is not a good enough reason to deny relief.  If it was, prejudice to negate excusable neglect would occur in every *Pioneer* scenario with less than a one hundred *per cent* distribution.  The Court concludes that a mere delay in closing the case should be viewed the same way.  There are no significant equities on the side of the Trustee and no significant negative factors working against Ms. Hawkins and Ms. Gibbs – each claimant thought they were doing what they needed to do to pursue their claims and then found out that they had not done so to satisfy the letter of the law.  This is precisely where equity should step in, at least on these facts, to insure the correct outcome.

## II.   Conclusion

In conclusion, the Proof of Claim filed by Tonya Hawkins shall be allowed.  Linda Gibbs shall be permitted to file a late claim, provided that the claim is filed by May 1, 2020 (taking into account the National Emergency created by the Covid-19 Pandemic and its impact upon the functioning of society and, specifically, this Court), without prejudice to the Trustee's right to object to the substance of any filed claim, including its amount. A separate order memorializing this outcome shall be entered.

cc:   Linda M. Gibbs
      Tonya Hawkins
      Trustee – Charles R. Goldstein, Esquire
      Counsel for Trustee – Marc E. Shach, Esquire
      Office of the United States Trustee
      Counsel for the U.S. Trustee – Hugh M. Bernstein, Esquire

**End of Opinion**

---

[5] Three other papers were filed by the Trustee after the hearing in this dispute (Dkt. Nos. 627, 634 and 636), including one claims related paper, that seek some form of pre-closure relief.